Curia, per
Earle, J.
This cause comes up a second time before this Court, on a motion to set aside a non-suit, ordered by his Honor who presided in the Court below, who conceived that the case made on the last trial, did not materially differ from that made on the first. This Court has come to a different conclusion ; and in pronouncing their judgment, setting aside the non-suit, it is necessary to consider the grounds of the former judgment, in connexion with the prominent facts proved then, and now, in order to show that the material facts, on which the opinion of the Court is now formed, were not in proof on the former occasion. This Court is too sensible of the importance of stability and uniformity in judicial decisions, to depart from those which have already been pronounced by their predecessors; and we should not hesitate to sustain the non-suit ordered below, however great the hardship which the plaintiffs would suffer, if we did not perceive, to our entire satisfaction, that the plaintiffs may have justice, without overturning the former decision. And first, I think it obvious enough, from the terms used by Chancellor Harper, in delivering the opinion of the Court, that he had not before him the original order of the commissioner, enjoining the plaintiffs. He defines the writ of injunction, and the service, and proceeds, “the order of a Chancellor for the granting of an injunction is not certainly, of itself, an injunction; nor does it restrain the party, unless the conditions upon which it was granted shall have been complied with, and the parly notified that they have been complied with, by being served with the writ.” The Act of 1825 extends to the master and commissioners in Equity the power to grant injunctions, which shall continue in force until the answer is filed, “ in the same manner as the chancellors are now authorized to do.” The order granted by the commissioner is in these words. “ On hearing this bill read, and counsel on the part of the complainants, it is ordered that the sheriff, John Anderson, and the judgment creditors, be restrained from further proceedings at law, on the executions within complained of, until a dissolution of this injunction, on proper application made to a chancellor, on the complainants giving *513 bond and approved security,” dated June 29th, 1827. It will also be borne in mind, that by the Act of 1784, notice of the application was required to the plaintiffs at law. This must be presumed to' have been given ; as also, notice to the sheriff, who by law was compelled to stay proceedings; and it now appears that he made such entry on his books. From this statement it will be perceived, that the order was not that a. writ of injunction should issue ; but an order that .neither the sheriff nor the plaintiffs should proceed, but be restrained therefrom, on complainants giving bond. Both having received notice of the application, the presumption is that they were present when the order was granted. As they did refrain from proceeding, the presumption is that they did so out of” respect for an order emanating from a competent officer. But I would not put the case on that ground, seeing there is much stronger. The bond was pretended to have been executed on the 2nd July, 1827, the third day after the order. It had the semblance of being a good bond; it was filed in the proper office; taken by the commissioner, and in pursuance of the order, who made the order ; and the important facts are now in evidence, which were not proved before, that the plaintiffs immediately afterwards, on inquiry of the commissioner, were informed by him that the bond had been given ; and that they never were apprised of the bond being void, until the trial of the action at law, which they subsequently instituted upon it. These facts, I conceive, present a case materially different from the former one. And the case now comes to this— were the plaintiffs at law, according to the rules and practice of the Court of Chancery, liable to contempt if they had proceeded at law, after such notice as they had received 1 — admitting for the present that their right to recover here, depends upon that test; for it has been put upon that ground by Chancellor Harper. The cases from 3 Atk. 564 and 567, are very much to the point, especially the last, where a plaintiff at law was held in contempt, who had proceeded after an injunction granted, although the writ had not issued. But there are later cases. In Osborne vs. Tenant, 14 Ves. 136, a motion was made to commit the defendant and his attorney, for a breach of injunction to restain execution under a judgment. The affidavit in support of the motion, stated that the defendant and his attorney were in Court when the motion was made ; theirs stated that they did not hear the order. Lord Eldon said, “if these parties by their at ten» *514 dance in Court were apprised that there was an order, that is sufficient; and I cannot attend too distinction so thin, as that persons standing- here, until the moment the chancellor is about to pronounce the order, which from all that passed, they must know will be pronounced, can by getting out of the way at that instant, avoid all the consequences. James vs. Downs, 18 Ves. 521, is to the same point. These were cases of injunctions to stay proceedings at law. The same point has bfen ruled in relation to other special injunctions, in Kempton vs. Eve, 2 V. & B. 348, and Vasandan vs. Rose, 2 J. & W. 264. Let it be conceded that these cases apply only to an attempted evasion of the order, without allowing time for the condition to be complied with, and the writ to issue, and that they do not reach so far as an indefinite delay, as is clearly intimated in James vs. Downes; yet the case is presented in a different aspect, when we consider that the plaintiffs were officially informed, in answer to any inqniry, that the condition had been complied with, and the bond given. Without inquiring further into the effect of the terms of the order, that the plaintiff be restrained eo instante, for that depends on Equity practice, with which we are not familiar, (although we are informed by a learned Chancellor, that it is not usual to issue writs in form, and that the-order and bond are considered as restraining the party, who would be regarded in- contempt if he proceeded,) I put the case on the ground, that the complainants in Equity, having complied with the condition and given bond, were entitled'to the writ of injunction, which might have issued at any moment. At that instant, the plaintiffs at law being informed of this fact, altogether refrain from further proceeding at law, and plead to the bill in Equity for injunction, and proceed to trial there, with the knowledge of the commissioner, and, as he knew, in consequence of his information. Supposing then the bond to have been good, could the plaintiff at law afterwards say, that as no writ had issued, he would proceed at law'? I apprehend not. It would be just as if a defendant at law should move to set aside the service of a writ, which he had verbally accepted, or agreed to waive, after pleading to the declaration. The plaintiffs had waived the issuing of the writ. They had afforded the complainants in Equity the full benefit of their injunction, under the belief induced by them, and by the commissioner, that every thing had been done necessary to entitle them to the writ. For the cause went on to final hearing on *515 the bill. In that state of the case, supposing the bond to have been duly executed, and an action brought on it, would it have availed the complainants in Equity, defendants at law, to plead in bar, that in fact no writ ever issued, and therefore, the plaintiffs were not actually enjoined 1 To state the proposition is enough to refute it. They would have been estopped from denying that a writ had issued, after having the full benefit of it. The answer to that inquiry, I am disposed to regard as the true test of the defendant’s liability in this action. If I have succeeded in showing that the plaintiffs would have been in contempt if they had proceeded at law, after waiving the writ and pleading to the bill, it would seem to be clear, and for a stronger reason, that the complainants in Equity would be liable, on their bond, after failing in their bill. Here 1 will refer again to the opinion of the Court, on the former hearing, to show that their judgment was based on a supposed state of facts disproved by the present trial. “ But if the defendant should neglect to give bond, after a reasonable time allowed for that purpose, or should give a bond manifestly informal and insufficient, like the present, certainly the complainant would be guitly of no contempt in proceeding. The party certainly cannot be entitled to the benefit of the order, who neglects or refuses to comply with the terms on which it was granted. In this case I have no doubt that the plaintiff might properly have proceded, after he discovered what sort of bond the defendant had given.” From this it is apparent, that the Court supposed the plaintiffs at law to have been early informed of the informal execution of the bond ; or to have delayed without any information at all that a bond had been given. The fact turns out to be that they were informed that a good bond was given, and that they never knew otherwise until the trial of the action at law upon it, when it was too late to proceed on their executions. In fact they could not have known that the bond was otherwise than good, nor have discovered it to be otherwise, by any examination they could make. So far from being manifestly informal, it wore the appearance of a perfect instrument, and they had the assurance of the commissioner that it was so. What then is the liability of the commissioner 1 The uniform practice in this State, since the Act of 1784, has been, for the commissioner to take the bond. He is required to approve of the security. He is the ministerial officer to issue the writ: and whether it be most proper that the bond should be to *516 him or to the plaintiffs at law, yet it is equally his duty to see that it is taken and filed; as much so, as it is the duty of the Clerk in the Court of Common Pleas, to take the bond in cases of attachment. He has undertaken to do it. tie granted an order restraining the plaintiffs eo instante the bond was given ; and then informed them that the bond was executed ; which had the effect of an actual injunction, by which the plaintiffs were restrained ; and by which it must be presumed he intended they should be restrained. If it had been otherwise, can it be supposed that he would have permitted the plaintiffs to go on to trial in Equity, without undeceiving them? It cannot now be allowed, that he shall avail himself of the plaintiffs facility in waiving the writ, or of their respectful obedience to his own order, to screen himself from the consequences of his negligence, or his unmerited confidence in the complainants. If the commissioner did not intend that his order should operate, and yet knew that it had operated, as an injunction, it was incumbent on him to have apprised the plaintiffs of the necessity of a writ, and that none had issued; or to give them the earliest notice that the supposed bond was a nullity. Having done neither, all the presumptions are against him ; and the Court are all of opinion that he must be held liable on his bond, for the amount of the plaintiffs damages.
Herndon, for the motion.
Thompson, contra,
The motion to set aside the non-suit is granted.
We concur. R. Gantt, Josiah J. Evans, J. S. Richardson, A. P. Butler.